J-S08026-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TORRIANO BEARD | : | |
| | : | |
| Appellant | : | No. 1080 WDA 2019 |

Appeal from the Order Entered June 27, 2019
In the Court of Common Pleas of Erie County Criminal Division at
No(s): CP-25-CR-0001932-2016

BEFORE: OLSON, J., McCAFFERY, J., and MUSMANNO, J.

MEMORANDUM BY McCAFFERY, J.: FILED MARCH 30, 2020

Torriano Beard (Appellant) appeals from the judgment of sentence[1]
entered in Erie County Court of Common Pleas, following a remand by this
Court to determine whether the statement he made to police was voluntary.[2]
Upon remand, the trial court has conducted an evidentiary hearing, concluded
Appellant's statement was voluntary, and re-imposed the judgment of

_____

[1] While Appellant purported to appeal from the June 28, 2019, order denying his post-sentence motion, the appeal lies properly from the judgment of sentence entered February 28, 2017. See Commonwealth v. Borovichka, 18 A.3d 1242, 1245 n.1 (Pa. Super. 2010). Accordingly, we have amended the caption.

[2] See Commonwealth v. Beard, 808 WDA 2017 (unpub. memo.) (Pa. Super. Nov. 13, 2018) (vacating judgment of sentence and remanding for evidentiary hearing).

sentence for his jury convictions of first-degree murder[3] and related offenses. We affirm.

As the trial court and the parties are familiar with the procedural history of this case, we set forth an abbreviated summary. Appellant was charged with homicide and related offenses based on evidence that in the early morning hours of February 14, 2016, he and a cohort, Lavance Kirksey, both shot Jemar Phillips[4] (the victim) in the parking lot of a bar. On June 23, 2016, ten days after the charges were bound over for trial at a preliminary hearing, Appellant, along with his then-attorney, the late John Moore, Esq., gave a statement to City of Erie Police Officer Rick Lorah at the police station. The statement was not recorded, and Appellant and the assistant district attorney (ADA) had agreed, generally, that the statement would not be used against Appellant.[5] N.T. Jury Trial Day 1, 1/17/17, at 16, 20.

On January 12, 2017, Appellant filed a motion in limine to exclude, inter alia, the statement he made to Officer Lorah. Appellant averred the parties' agreement, "that the statement 'would not be used against him,'" precluded

_____

[3] 18 Pa.C.S. § 2502(a).

[4] The victim's first name was also spelled as Jermar in the record. See N.T. Post Trial Motion, 6/27/19, at 4.

[5] While the statement was not video-recorded, Officer Lorah summarized the statement in a report. N.T., 6/27/19, at 11.

any introduction of the statement at trial. Appellant's Motion in Limine, 1/12/17, at 4. Appellant further asserted he "was never Mirandized."[6] Id. The trial court heard argument on Appellant's claim on the morning of the first day of trial.[7] Appellant additionally argued that "part of the incentive to come forward and give the statement [was] that it won't be used against him." N.T., 1/17/17, at 21. The trial court ruled the Commonwealth could not use the statement in its case in chief, but if Appellant were to take the stand and say "something different," then the Commonwealth could use the prior statement to impeach him.[8] Id. at 20.

Appellant did not testify at trial. The jury found him guilty of first-degree murder, conspiracy to commit murder, possessing instruments of crime, aggravated assault, recklessly endangering another person, and firearms not to be carried without a license.[9] On February 28, 2017, the trial court imposed

_____

[6] See Miranda v. Arizona, 384 U.S. 436 (1966).

[7] By the time of trial, Appellant was no longer represented by Attorney Moore, and was represented by new counsel.

[8] The Commonwealth stated it did not intend to present the statement in its case in chief, but argued that if Appellant were to testify inconsistently with the statement, it should be permitted to present the statement. Id. at 16, 18-20 ("So we can let [Appellant] lie or be inconsistent and we have no control over that? That's not how the agreement was."; "But we never said if you take the stand and give a different statement[,] we can't use [the statement.]"). The trial court agreed. Id. at 21 ("[If Appellant] lies about something — he can't have it both ways.").

[9] 18 Pa.C.S. §§ 903(a), 907(a), 2502(a), 2702(a), 2705, 6106(a).

a sentence of life imprisonment without parole. Appellant filed a post-trial motion, which was denied.

Appellant appealed to this Court, which issued a memorandum decision on November 13, 2018. This Court construed Appellant's claim — that the trial court's permitting the statement to be used for impeachment purposes violated the parties' agreement that it would not be used against him — as an argument that his statement was involuntary because it was induced by a false promise made by the Commonwealth. Beard, 808 WDA 2017 (unpub. memo.) at 17, 20. This Court reasoned, pursuant to Article 1, Section 9 of the Pennsylvania Constitution and Pennsylvania decisional authority, that Appellant's statement to Officer Lorah would be admissible for impeachment purposes if it were voluntarily given. Id. at 19, citing Pa. Const. Art. I, § 9 ("The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself."); Commonwealth v. Busanet, 54 A.3d 35, 59 (Pa. 2012) ("[R]egardless of whether the challenged statement was obtained in violation of Miranda, it would not be subject to suppression because it was admitted for the limited purpose of impeaching [the defendant's] testimony.").

This Court observed, however, the trial court made no factual findings or legal conclusions regarding the voluntariness of Appellant's statement, and the record was deficient to allow this Court to undertake plenary review of

such a question. Id. at 20-21, citing Commonwealth v. Templin, 795 A.2d 959, 961 (Pa. 2002) ("The determination of whether a confession is voluntary is a conclusion of law and, as such, is subject to plenary review."). Thus, this Court remanded to the trial court to "make factual determinations regarding the circumstances of Appellant's statement to police[,and] then decide, under the totality of those circumstances (including the agreement reached by the parties), whether Appellant's statement was voluntary." Beard, 808 WDA 2017 (unpub. memo.) at 21-22. We instructed:

> If the court determines that [the statement was not voluntary], and therefore the statement is inadmissible for impeachment purposes, then the court shall order a new trial. If, on the other hand, the court finds that Appellant's statement was voluntary, and admissible for impeachment purposes as it originally ruled, then the court shall re-impose Appellant's judgment of sentence. Appellant may then file an appeal, limited to issues concerning the court's decision on remand.

Id. at 22.[10]

On remand, the trial court conducted an evidentiary hearing on June 27, 2019. By this time, Attorney Moore had passed away. Officer Lorah testified to the following: after the preliminary hearing, Attorney Moore contacted him "on multiple occasions," seeking to have Appellant give a statement. N.T., 6/27/19, at 6. Officer Lorah was not "interested in speaking to" Appellant,

_____

[10] This Court denied relief on Appellant's other issues on appeal — challenges to the weight of the evidence and the admission of certain testimony.

because the police "had already built [its] case" based on multiple statements from an eyewitness, who was in the victim's car, that Appellant and another man fired guns at the victim, and the same witness' identification of Appellant as one of the shooters.[11]  Id. at 7, 16-17, 26.  Nevertheless, Officer Lorah and the Commonwealth agreed to hear a statement from Appellant.  Id. at 6.  Per Attorney Moore's request, the statement was not recorded and Appellant was not advised of Miranda rights.  Id. at 8-11.  Attorney Moore was with Appellant the entire time, approximately 45 minutes, he was in the police department; the statement itself took approximately 15 minutes.  Id. at 17-18.  Additionally, the ADA agreed that the Commonwealth would not use anything in his statement against him.  Id. at 17, 20.

Officer Lorah did not ask any questions, but simply took the statement Appellant wished to give.  N.T., 6/27/19, at 15, 30.  At the post-remand hearing, Officer Lorah summarized Appellant's statement as follows:  on the night of the shooting, Appellant was in the bar parking lot with Kirksey (the alleged other shooter) and two others.  Id. at 11.  Appellant had a .357 revolver in his pocket.  Appellant saw his friend, Antonio Barnes, who was with the victim.  Appellant had "a beef" with the victim about a woman.  Id. at 12.  The victim said "something about should we fight or should there be a beef

_____

[11] This eyewitness, along with Antonio Barnes, was a passenger in the victim's car when they entered the parking lot.  As stated infra, Appellant knew Barnes.

here," and "out of nowhere, . . . Kirksey comes running" with a .45 caliber handgun and shot the victim. Id. at 12-13. The victim fell and Appellant ran to him and said, "[Y]ou saw who shot you. It wasn't me," and the victim "agreed." Id. at 13. Appellant argued with Kirksey about the shooting, but then gave Kirksey his gun so that he (Appellant) could go in the bar to tell friends — who Appellant had dropped off — they had to leave. Id. Kirksey then ran over and shot the victim again, this time with Appellant's gun. Id. at 13-14.

Appellant testified to the following: after his preliminary hearing, he talked two or three times with Attorney Moore, who advised him to talk to the police and the ADA to see if "they could help [him] out in some way." N.T., 6/27/19, at 33-34, 42, 45. Appellant responded he "didn't really want to give a statement, but [he] would listen to whatever they had to say." Id. at 33. On the morning of the statement, prison officials informed him his attorney was there and they were going to the police station. Id. at 34. Upon arrival at the police station, Appellant was placed in a holding cell for 30 to 45 minutes, where he again told Attorney Moore he did not want to give a statement. Id. at 35-36. The ADA joined them and stated she was not promising anything in terms of helping him, at which point Appellant told Attorney Moore he "wanted to end the interview." Id. at 37. The ADA left, and Attorney Moore again advised Appellant it was in his best interest to make a statement to the police. Id. at 38. Detectives then entered the room and

tried "to talk [him] into giving a statement," promising to "look into" any statement he gave and that the statement would "not be used against [him] at trial." Id. at 38. Appellant believed this "meant that anything that [he said would] not be used against [him] at trial." Id. at 39. At this point, Appellant felt "stressed out." Id. at 38. Appellant testified his statement was not voluntary because Attorney Moore "was basically trying to force" him to give a statement, and the detective was "trying to talk [him] into giving a statement." Id. at 42. Subsequently, Appellant told his new counsel he wished to testify at trial, but counsel advised him not to because the ADA "would use [the] prior statement against" him. Id. at 39-40. Appellant was surprised because he "didn't have a clue that it was going to be used." Id. at 40. Finally, Appellant agreed that "most of" Officer Lorah's testimony concerning the contents of his statement was true; Appellant clarified the reason he gave Kirksey his gun before going into the bar was because the bar had a metal detector. Id. at 40-41.

The trial court concluded Appellant's statement was voluntary, and thus admissible for impeachment purposes. N.T., 6/27/19, at 69. The court further found that, with respect to Appellant's decision not to testify at trial, he did not say at this post-remand hearing "that it was because of the statement that he gave" to Officer Lorah. Id. at 68. The court also noted that at trial, a colloquy was conducted, which informed Appellant of his right to testify. Id. at 67-68. Accordingly, the court re-imposed the judgment of sentence,

including the mandatory term of life imprisonment without parole. Id. Appellant filed a post-trial motion, which was denied, and took this timely appeal.

Appellant raises three issues for our review:

1. Was the trial court in error finding Appellant's statement of June 23, 2016 was voluntary?

2. Was the trial court in error finding that Appellant did not testify that the use of his June 23, 2016[, statement] as impeachment was the reason he did not testify at trial?

3. Was Appellant's counsel permitted to waive his Miranda rights?

Appellant's Brief at 3.

First, Appellant avers the trial court erred in finding that under the totality of the circumstances, his June 23, 2016, statement was voluntary. Appellant acknowledges he "was not in an abusive environment" and "his attorney was with him throughout the interview," but he cites his post-remand testimony that he "did not believe that his statement was voluntary." Appellant's Brief at 12, citing N.T., 6/27/19, at 42. Appellant contends "he did not make an informed decision to make a statement" and "was lulled into making a statement," where he was a prisoner in a police station, he was told his statement would not be used against him at trial, and he was not advised of his Miranda rights nor told his statement could be used for impeachment purposes. Id. at 13. Appellant further asserts he "was unable to exercise his

rights to testify at his trial because his statement . . . was going to be used as impeachment evidence." Id. at 16.

In his second issue, Appellant alleges the trial court erred in finding his decision to not testify at trial was not affected by the potential use of his statement for impeachment. Instead, Appellant maintains, he testified at the remand hearing that he "had every intention to testify at his trial," but did not upon trial counsel's advice. Appellant's Brief at 18.

In his final issue, Appellant claims Attorney Moore was not authorized to waive, on his behalf, advisement of his Miranda rights. Appellant reasons "[t]here was no intelligent and voluntary waiver of his Miranda rights since he was not informed of them." Appellant's Brief at 19. We conclude no relief is due.

We note the relevant standard of review:

> In reviewing a suppression ruling, this Court is bound by the lower court's factual findings that find support in the record but we are not bound by the court's conclusions of law. The determination of whether a confession is voluntary is a conclusion of law and, as such, is subject to plenary review.

Templin, 795 A.2d at 961 (citations omitted).

We consider, as did the prior panel of this Court on appeal, that "regardless of whether the challenged statement was obtained in violation of Miranda, it would not be subject to suppression [when] admitted for the limited purpose of impeaching [a defendant's] testimony." See Busanet, 54 A.3d at 59, citing Pa. Const. Art. 1, § 9 ("use of a suppressed . . . voluntary

confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself"); Harris v. New York, 401 U.S. 222, 225-26 (1971) (prosecution may impeach testifying criminal defendant with voluntary statements police obtained in violation of Miranda); Commonwealth v. Baxter, 532 A.2d 1177, 1178 (Pa. Super. 1987) (holding use of voluntary confession for impeachment is not violation of Pennsylvania Constitution or Fifth Amendment to United States Constitution).

The voluntariness of a confession is determined by considering the totality of the circumstances. Templin, 795 A.2d at 963-64. Our Supreme "Court has applied the totality of circumstances test with no less force or vigor in cases where there was a claim that a promise or inducement rendered the confession involuntary." Id.

> In determining voluntariness, the question "is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess." "By the same token, the law does not require the coddling of those accused of crime. One such need not be protected against his own innate desire to unburden himself." Factors to be considered in assessing the totality of the circumstances include "the duration and means of the interrogation; the physical and psychological state of the accused; the conditions attendant to the detention; the attitude of the interrogator; and any and all other factors that could drain a person's ability to withstand suggestion and coercion."

Id. at 966 (citations omitted and emphasis added).

Preliminarily, we note Appellant's Miranda claim — that he was not advised of his rights and Attorney Moore was not authorized to waive them on his behalf — is misplaced. We emphasize the trial court suppressed the statement, but ruled the Commonwealth could present it for impeachment purposes if Appellant gave any testimony inconsistent with the statement.[12] See N.T., 1/17/17, at 22. Appellant wholly ignores this Court's prior memorandum, which determined the trial court's ruling was proper so long as Appellant's statement was voluntary. See Beard, 808 WDA 2017 (unpub. memo.) at 18-19; see also PA. CONST. Art. 1, § 9; Busanet, 54 A.3d at 59. In this regard, we review the trial court's post-remand finding that the statement was voluntarily given.

The trial court considered Appellant's testimony that he did not want to give a statement and that he was not aware he was going to the police station until prison officials informed him. N.T., 6/27/19, at 66. Nevertheless, the court noted Appellant and Attorney Moore "had plenty of time to converse" prior to the statement, and indeed "most of" Appellant's 45 minutes at the police department "was spent . . . in consult with his attorney." Id. at 63. The court also found the following: although Appellant stated he was "stressed out," "Detective Lorah noticed nothing unusual about his physical or

_____

[12] Furthermore, as stated above, the Commonwealth clearly informed the court it did not intend to present the statement in its case in chief. N.T., 1/17/17, at 17.

psychological state." Id. No promises were made to Appellant, and the ADA conveyed to Appellant "that there would be no promises [or] guarantees." Id. at 64. The court concluded:

> There was no evidence . . . that [Appellant] didn't have an ability to withstand any questioning or suggestions or coercion by Detective Lorah, but I must note also, in fact, there were no suggestions or coercions by Detective Lorah, because he really asked no questions at all of [Appellant]. He simply allowed [Appellant] to give his statement and that is what did happen.

Id. at 64.

Appellant does not dispute these findings of fact and, in any event, we are bound by them. See Templin, 795 A.2d at 961. Appellant's claims — that he was wrongly promised his statement would not be used against him at trial and thus "did not make an informed decision to make a statement," and that he "was lulled into making a statement" — are not focused on the proper inquiry for voluntariness. See Templin, 795 A.2d at 966; Appellant's Brief at 13. Instead, the trial court properly considered "not whether [he] would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived [Appellant] of his ability to make a free and unconstrained decision to confess." See Templin, 795 A.2d at 966 (emphasis added). The certified record supports the court's findings, and thus we do not disturb its conclusion that Appellant's statement was voluntarily given. See id.

Accordingly, we further hold the trial court properly ruled the statement was admissible for impeachment purposes. See PA. CONST. Art. 1, § 9 ;

Busanet, 54 A.3d at 59; Baxter, 532 A.2d at 1178. In this regard, no relief is due on Appellant's claim that the trial court's improper ruling affected his decision not to testify at trial.

In light of the foregoing, we do not disturb the trial court's finding that Appellant's June 23, 2016, statement was not admissible at trial but could be introduced for impeachment purposes if Appellant testified inconsistently to the statement. We thus affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/30/2020